UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIFFANY TAYLOR,

                       Plaintiff,

v.                                            Case No. 3:14-CV-0928 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                       Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LACHMAN & GORTON                         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          PETER JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tiffany Taylor ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 15, 17.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 8, 1978. Plaintiff has a college education, and is certified in elementary and special education. Plaintiff has worked as a special education teacher, preschool teacher, skilled training coordinator, transport driver, and camp counselor. Generally, Plaintiff's alleged disability consists of anxiety, depression, migraines, panic attacks, obsessive compulsive disorder ("OCD"), agoraphobia, and keratinizing dysplasia of the vocal cords. Plaintiff's alleged disability onset date is June 1, 2010.

### B. Procedural History

On June 23, 2011, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied on October 27, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On December 17, 2012, Plaintiff appeared in a video hearing before the ALJ, Jennifer Gale Smith. (T. 33-77.) On January 8, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-33.) On June 26, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 14-28.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015, and has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. (T. 14.) Second, the ALJ found that Plaintiff's borderline personality disorder, anxiety disorder, and panic disorder with agoraphobia are severe impairments, but that Plaintiff's migraine headaches, keratinizing dysplasia of the vocal chords,

warts, and obesity are not severe impairments. (T. 14-17.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 17-19.) The ALJ considered Listings 12.06 and 12.08. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels, except that Plaintiff is limited to unskilled work that is isolated with only occasional supervision. (T. 19.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work as a special education teacher, preschool teacher, skilled training coordinator, transport driver, or camp counselor. (T. 25.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 26-27.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff essentially argues the ALJ's step five determination was erroneous because the ALJ erred in determining Plaintiff's RFC. (Dkt. No. 15, at 8-14 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in weighing the medical evidence of record. (*Id.* at 14-23.) Third, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 23-24.)

Defendant makes one primary argument in support of her motion for judgment on the pleadings. Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (Dkt. No. 17, at 5-18 [Def.'s Mem. of Law].) Within this argument, Defendant argues that (1) the ALJ's step five determination was supported by substantial evidence because the ALJ did not err in formulating the RFC, (2) the ALJ's assessment of the medical opinion evidence of record was supported by substantial evidence, and (3) the ALJ's credibility assessment was supported by substantial evidence. (*Id.* at 5-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

5

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ Properly Assessed the Medical Evidence of Record in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 5-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at

*8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

### i. State Agency Psychiatric Consultant, M. Apacible, M.D.

On October 26, 2011, Dr. Apacible opined that Plaintiff is able to meet the basic mental demands of unskilled work. (T. 23.) Dr. Apacible opined that Plaintiff was "not significantly

7

limited" in social interaction, and was "not significantly limited" to "moderately limited" in understanding and memory, sustained concentration and persistence, and adaptation. (*Id.*) Plaintiff argues that the ALJ erred in affording great weight to Dr. Apacible's opinion of because Dr. Apacible did not examine Plaintiff, and the ALJ failed to analyze the regulatory factors in assessing the opinion. (Dkt. No. 15, at 16-18 [Pl.'s Mem. of Law].)

First, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Second, the ALJ properly considered the applicable regulatory factors by citing Dr. Apacible's professional specialty in psychiatry, program knowledge, and the consistency of his opinion with Dr. Long's medical source statement regarding Plaintiff's ability to perform mental work-related activities. (*Id.*) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Apacible's opinion was supported by substantial evidence.

### ii. Consultative Psychiatric Examiner, Sara Long, Ph.D.

On August 29, 2011, Dr. Long diagnosed Plaintiff with borderline personality disorder, polysubstance abuse (cannabis and alcohol), and indicated that OCD was not ruled out. (T. 328.) Dr. Long opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently, maintain attention and concentration, maintain a regular work schedule, learn new tasks, perform complex tasks independently, make appropriate decisions within context, relate adequately with others, and adequately manage stress. (T. 327.) Dr. Long opined that the results of her evaluation of Plaintiff were consistent with psychiatric and substance abuse problems, which may at times interfere with Plaintiff's ability to function on a regular basis. (*Id.*)

Upon examination, Dr. Long observed that Plaintiff was cooperative and had good social skills. (T. 326.) Dr. Long observed that Plaintiff was neat and well groomed, and that Plaintiff's gait, posture, motor behavior, and eye contact were normal. (*Id.*) Dr. Long observed that Plaintiff's speech was fluent and clear, mood was euthymic, and affect was full range and appropriate to speech and thought content. (*Id.*) Dr. Long observed that Plaintiff's thought processes were coherent and goal directed, and Plaintiff's recent and remote memory and cognitive functioning were intact. (*Id.*)

The ALJ afforded significant weight to Dr. Long's opinion based on Dr. Long's examination of Plaintiff. (T. 22.) The ALJ reasoned that Dr. Long's medical statement was consistent with the record evidence "to the extent Dr. Long determined that the claimant was able to follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; make appropriate decisions within context; relate adequately with others; and was capable of stress management." (*Id.*) However, the ALJ found

that Dr. Long's determination that Plaintiff could perform complex tasks independently was an overstatement of Plaintiff's mental ability. (*Id.*) Additionally, the ALJ found that Dr. Long's determination that Plaintiff's psychiatric and substance abuse problems might interfere with her ability to function "is inconsistent with Dr. Long's own medical source statement, which clearly supports . . . finding that the claimant maintains the ability to work at substantial gainful activity levels." (*Id.*)

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. §§ 404.1545, 416.945. In formulating a plaintiff's RFC, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

For these reasons, the ALJ's assessment of Dr. Long's opinion was supported by substantial evidence.

### iii. Treating Nurse Practitioner, Ryan Little, N.P.

On March 19, 2012, and December 14, 2012, Nurse Practitioner Little submitted assessments of Plaintiff's work-related limitations. (T. 23.) Nurse Practitioner Little opined that Plaintiff had extreme limitation in concentration and persistence, interaction with others, adaptation/stress, and would likely be absent from work more than three times per month due to her panic disorder, PTSD, and OCD. (T. 403-04.) Nurse Practitioner Little opined that Plaintiff's limitations began in July 2011. (T. 405.) Additionally, Nurse Practitioner Little opined that Plaintiff's migraine headaches were triggered by panic disorder, that Plaintiff would likely have more than six migraine headaches a month, and that Plaintiff should not work during migraine episodes. (T. 403-04.)

The ALJ afforded little weight to the opinion of Nurse Practitioner Little. (T. 23.) The ALJ reasoned that nurse practitioners are not acceptable medical sources under the regulations, and that the extreme limitations in the opinion were not supported by Nurse Practitioner Little's treatment notes or Plaintiff's reported activities during the time period of alleged disability. (*Id.*) Nonetheless, the ALJ indicated that her RFC determination essentially limited Plaintiff "to low-stress jobs, thereby reducing the trigger for her headaches." (*Id.*)

First, the ALJ correctly noted that a nurse practitioner is not an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1513(a), 416.1913(a). An ALJ may consider a nurse practitioner's opinion as an "other source" opinion to show the severity of a plaintiff's impairments and how the impairments affect the plaintiff's ability to work. 20 C.F.R. §§ 404.1513(a), (c)-(d), 416.913(a), (c)-(d). However, an opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. §§ 404.1513(a), 404.1527(b), 416.1913(a), 416.927(b).

Second, the ALJ properly applied the regulations in evaluating Nurse Practitioner Little's opinion. As discussed above, the ALJ considered Nurse Practitioner Little's professional credentials, treating relationship with Plaintiff, treatment notes, and cited inconsistencies between Nurse Practitioner Little's opinion and other substantial evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 17-23.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

Accordingly, the ALJ's assessment of Nurse Practitioner Little's opinion was supported by substantial evidence.

### iv. Treating Psychiatrist, Tara J. Belsare, M.D., and Treating Counselor Cathy Fredella, L.C.S.W.

On December 7, 2012, Dr. Belsare and Ms. Fredella submitted a joint opinion of Plaintiff's mental limitations resulting from her OCD and panic disorder. (T. 553-55.) Dr. Belsare and Ms. Fredella opined that Plaintiff had an "extreme" limitation in her ability to complete a normal workday and workweek without interruptions from psychological symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.[1] (T. 553.) Dr. Belsare and Ms. Fredella opined that Plaintiff had a "medium" limitation in her abilities to perform activities within a schedule; maintain regular attendance and/or be punctual within customary tolerances; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to ordinary stressors and changes in the work setting.[2] (T. 553-54.) Dr. Belsare and Ms. Fredella opined that Plaintiff had a "more than slight"

---

[1] The assessment form stated that "extreme" indicated there is a major limitation in this area. There is no or very little useful ability to function in this area. (T. 553.)

[2] The assessment form stated that "medium" indicated more than a slight, but less than a serious, limitation in this area. The individual is still able to function satisfactorily for a certain portion of the day and/or perform the tasks satisfactorily on some occasions. The approximate loss would be more than 20 percent for the particular activity but less than 33 percent of the day. (T. 553.)

limitation in her abilities to maintain attention and concentration for extended periods of time, sustain ordinary routine without special supervision, and accept instructions and respond appropriately to criticism from supervisors.³ (*Id.*) Dr. Belsare and Ms. Fredella opined that Plaintiff would likely have more than three absences from work per month. (T. 554.)

The ALJ afforded partial weight to the joint opinion of Dr. Belsare and Ms. Fredella. (T. 23-24.) The ALJ noted that the opinion of Dr. Belsare, as a treating psychiatrist, would normally be afforded controlling weight, as long as the opinion was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record. (T. 24.) The ALJ determined that Dr. Belsare and Ms. Fredella's opinion that Plaintiff's mental limitation was "none/mild," "more than slight," or "medium" in eight out of nine functional areas was supported by their treating notes and reports. (*Id.*)

However, the ALJ determined that Dr. Belsare and Ms. Fredella's opinion that Plaintiff had an "extreme" limitation in her ability to complete a normal workday and perform at a consistent pace, and would likely miss more than three workdays per month was not supported by their own treatment notes or "any clinical or diagnostic findings that would render the claimant incapable of performing the mental demands of unskilled work." (*Id.*) Additionally, the ALJ cited substantial evidence that was inconsistent with these portions of Dr. Belsare and Ms. Fredella's opinion, including (1) Dr. Apacible's opinion that Plaintiff is able to meet the basic mental demands of unskilled work, and (2) Dr. Long's opinion that Plaintiff could perform simple tasks, maintain attention and concentration, and maintain a regular work schedule. (T. 22-23.)

---

³ The assessment form stated that "more than slight" indicated there is more than a slight limitation, but the individual is still able to function satisfactorily. (T. 553.)

13

Plaintiff argues that the ALJ erred by not adopting the entirety of Dr. Belsare and Ms. Fredella's opinion of Plaintiff's limitations and by affording the opinion less than controlling weight. (Dkt. No. 15, at 20-23 [Pl.'s Mem. of Law].) First, as discussed in Part III.A.ii. of this Decision and Order, an ALJ is not required strictly to adhere to the entirety of one medical source's opinion. *Matta*, 508 F. App'x 53 at 56; *Zongos*, 2014 WL 788791, at *9. Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *Miles*, 645 F.2d at 124.

Second, the ALJ properly applied the regulatory factors in assessing the opinion of Dr. Belsare and Ms. Fredella. (T. 23-24.) The ALJ considered Dr. Besare and Ms. Fredella's professional credentials, treating relationship with Plaintiff, and treatment notes, and cited inconsistencies between their joint opinion and other substantial evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 17-23.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

Accordingly, the ALJ's assessment of Dr. Belsare and Ms. Fredella's opinion was supported by substantial evidence.

For these reasons, the ALJ properly assessed the medical evidence of record in determining Plaintiff's RFC. Therefore, remand is not necessary on this basis.

      **B.**      **Whether the ALJ's Credibility Evaluation Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 17-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of her symptoms are not fully credible. (T. 21.) In assessing Plaintiff's subjective complaints, the ALJ determined that Plaintiff's complaints are not well supported by the evidence as a whole, including the significant gaps in Plaintiff's mental health treatment, and inconsistencies in Plaintiff's statements regarding her symptoms, alleged problems maintaining employment, daily activities, and continued marijuana use. (T. 21-22.)

The ALJ noted "significant gaps" in Plaintiff's mental health treatment history and determined that Plaintiff's "failure to seek treatment on a more frequent basis is inconsistent with the persistent psychiatric problems of which she is complaining." (T. 22.) Plaintiff argues that the ALJ should have inquired as to the reasons for gaps in Plaintiff's mental health treatment before drawing an adverse inference. (Dkt. No. 15, at 23-24 [Pl.'s Mem. of Law].) However, the ALJ noted that Plaintiff was discharged from her mental health provider in March 2011 for noncompliance with treatment. (T. 21.) The ALJ cited a treatment note from Binghamton General Hospital Outpatient Mental Health Clinic, reporting that Plaintiff "is refusing to attend individual or group therapy, continue[s] to test 'high positive' for cannabis, [and] is not following treatment recommendations that might result in a positive outcome." (T. 298.)

Additionally, while the ALJ noted gaps in Plaintiff's mental health treatment, the ALJ did not base her credibility assessment on that one factor alone. (T. 22.) The ALJ also considered inconsistencies in Plaintiff's statements regarding her symptoms, her alleged problems maintaining employment, her daily activities, and her continued use of marijuana. (T. 21-22.) For example, the ALJ noted that Plaintiff denied having any panic when she was seen by her primary care provider on May 25, 2011, but had previously reported having frequent panic attacks

when she presented to her primary care provider with Department of Social Services forms to be completed on December 16, 2010. (T. 21.) The ALJ noted that Plaintiff testified that she could not handle her job at Compassionate Care, yet reported to her mental health provider that she lost the job because of an inability to provide a date when she would return to work. (T. 22.) The ALJ further noted that Plaintiff testified at the hearing in December 2012 that she had not used marijuana since February 2012, yet told her mental health provider that she was still using marijuana in July 2012. (T. 22, 490.)

Accordingly, the ALJ's overall decision to discount Plaintiff's allegations is supported by substantial evidence even without considering the lack of continuity in Plaintiff's mental health treatment. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error where the credibility analysis was supported by substantial evidence). Therefore, even if the ALJ erred by referencing gaps in Plaintiff's mental health treatment, it would be harmless.

For these reasons, the ALJ's credibility evaluation was supported by substantial evidence, and remand is not necessary on this basis.

### C. Whether the ALJ's Step Five Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff

when she presented to her primary care provider with Department of Social Services forms to be completed on December 16, 2010. (T. 21.) The ALJ noted that Plaintiff testified that she could not handle her job at Compassionate Care, yet reported to her mental health provider that she lost the job because of an inability to provide a date when she would return to work. (T. 22.) The ALJ further noted that Plaintiff testified at the hearing in December 2012 that she had not used marijuana since February 2012, yet told her mental health provider that she was still using marijuana in July 2012. (T. 22, 490.)

Accordingly, the ALJ's overall decision to discount Plaintiff's allegations is supported by substantial evidence even without considering the lack of continuity in Plaintiff's mental health treatment. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error where the credibility analysis was supported by substantial evidence). Therefore, even if the ALJ erred by referencing gaps in Plaintiff's mental health treatment, it would be harmless.

For these reasons, the ALJ's credibility evaluation was supported by substantial evidence, and remand is not necessary on this basis.

### C. Whether the ALJ's Step Five Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff

can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Here, the ALJ provided a hypothetical to the vocational expert that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether Plaintiff could perform other existing work in the national economy. (T. 26-27.) The vocational expert testified that, based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform jobs that exist in significant numbers in the national economy. (*Id.*) Plaintiff essentially argues that the ALJ erred in relying on vocational expert testimony that was in response to a hypothetical that did not accurately represent Plaintiff's limitations, specifically, Plaintiff's likely absences from work and the percentage of the workday that Plaintiff would likely be off task. (Dkt. No. 15, at 8-14 [Pl.'s Mem. of Law].)

18

As discussed in Part III.A. of this Decision and Order, the ALJ's RFC determination was supported by substantial evidence, including (1) Dr. Apacible's opinion that Plaintiff is able to meet the basic mental demands of unskilled work, and (2) Dr. Long's opinion that Plaintiff could perform simple tasks, maintain attention and concentration, and maintain a regular work schedule. (T. 327, 386.) Because the Court finds no error in the ALJ's RFC assessment, we conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on the RFC. *Dumas*, 712 F.2d at 1553-54 (approving a hypothetical question to a vocational expert that was based on an assumption supported by substantial evidence in the record).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 11 , 2016
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge